UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
BANK OF AMERICA, N.A.,

    Plaintiff,

-v-

JACOBI TOOL & DIE M.F.G., INC., a
New York corporation; and
ROGER JACOBI, an individual,

    Defendants.
--------------------------------------------------------X
FEUERSTEIN, S., Senior District Judge:

Case No. 17-cv-6828 (SFJ)(AKT)
**Memorandum and Order**

**FILED**
**CLERK**
8/5/2019 1:25 pm
**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

I.    <u>Introduction</u>

    Plaintiff Bank of America, N.A. ("Plaintiff" or "Bank") commenced this action against Defendants Jacobi Tool & Die, M.F.G., Inc. ("Company") and Roger Jacobi ("Jacobi"; together with Company, the "Defendants"), alleging, *inter alia*, a breach of a line of credit loan agreement by the Company and Jacobi's related breach of his guaranty of that agreement. (*See generally* Verified Complaint ("Complaint")(ECF No. 1).) Presently before the Court is the Bank's motion seeking summary judgment in its favor on all of its claims (hereafter, the "Summary Judgment Motion") (*see* ECF No. 22; *see also* Mem. of Law in Supp. of Mot. Summ. J. (ECF No. 22-5) (hereafter, "Support Memo")), which is unopposed by Defendants. For the reasons that follow, the Bank's Summary Judgment Motion is GRANTED in part and DENIED in part.

1

II.	Background

   A. Factual Background[1]

On January 15, 2009, non-party Jacobi Realty Holdings, LLC ("Realty") borrowed one-and-one-half million dollars ($1,500,000.00) from the Bank, which loan matured on May 15, 2016 and which the Company guaranteed. (Hereafter, the "Mortgage Loan".) (*See* Complaint, ¶14.)

On March 9, 2010, Jacobi, as a creditor of the Company, executed a Subordination Agreement in favor of the Bank, thereby subordinated certain of the Company's obligations to him to the Company's obligations owed the Bank. (*See id.*, ¶12; *see also* Bank 56.1 Statement, ¶6.)

On June 30, 2015 and pursuant to a loan agreement (hereafter, the "LOC Loan Agreement"), the Bank extended a five-hundred thousand dollar ($500,000.00) line of credit ("LOC") to the Company that expired on September 15, 2016 (hereafter, the "Expiration Date"). (*See* Bank 56.1 Statement, ¶¶1, 7.) "The LOC Loan Agreement provided, *inter alia*, [that] in the event of a default, [the Bank] would be entitled to terminate the LOC Loan Agreement, declare all sums outstanding under the LOC Loan Agreement to be immediately due and payable, charge interest at the default rate of six (6%) percent over the existing rate of interest on the LOC Loan and take any other actions available to [the Bank]." (*Id.*, ¶2.)

The LOC was collateralized by a Security Agreement pursuant to which the Company "granted to the Bank a first priority blanket security interest upon all assets of [the Company]."

---

[1] Unless otherwise indicated, the facts are taken from the Bank's Local Rule 56.1 Statement (hereafter, the "Bank 56.1 Statement")(*see* ECF No. 22-4), and Defendants' "Affidavit in Opposition to the Motion for Summary Judgment" (hereafter, "Jacobi Affidavit")(*see* ECF No. 22-6). Citation to the Bank's Rule 56.1 Statement incorporates by reference the documents cited therein.

(Complaint, ¶10 (listing property pledged as collateral[2] (hereafter, the "Collateral")); *see also id.*, ¶9 (stating the Security Agreement was added "collateral security for the prompt and compete payment and performance of all of [the Company]'s then or thereafter-existing debts, obligations, and liabilities to the Bank"); *see also* Bank 56.1 Statement, ¶¶3-4.)  The LOC was further secured by Jacobi's June 30, 2015 absolute and unconditional guaranty (hereafter, the "Guaranty"), which guaranteed "any and all indebtedness of [the Company]". (*See id.*, ¶11; Ex. 3 (Guaranty) at ¶1, *attached to* Complaint; *see also* Bank 56.1 Statement, ¶5.)

After its May 15, 2016 maturity, the Company "defaulted on the Mortgage Loan guaranty by failing to pay the balance of the Mortgage Loan . . . ." (*Id.*, ¶15.) It also "defaulted under the LOC Loan Agreement as a result of, *inter alia*, (1) its expiration on September 15, 2016, and the failure of [the Company] and/or Jacobi to make payment to the Bank for the sums due thereunder; and (2) [the Company]'s failure to keep its corporate good standing within the State

---

[2] The list includes the following property:

> (a) all accounts, and all chattel paper, instruments, deposit accounts, letter of credit rights, and general intangibles related thereto; and all returned or repossessed goods, which, on sale or lease, resulted in an account[;]
> (b) all inventory[;]
> (c) all equipment and fixtures now owned or hereafter acquired by [the Company;]
> (d) all negotiable and nonnegotiable documents of title covering any Collateral[;]
> (e) all accessions, attachments and other additions to the Collateral, and all tools, parts and equipment used in connection with the Collateral[;]
> (f) all substitutes or replacements for any Collateral, all cash or non-cash proceeds (including insurance proceeds), product, rents and profits of the Collateral, and all income, benefits and property receivable on account of the Collateral, and all supporting obligations covering any Collateral[; and]
> (g) all books, data and records pertaining to any Collateral, whether in the form of a writing, photograph, microfilm or electronic media, including but not limited to any computer-readable memory and any computer hardware or software necessary to process such memory.

(Complaint, ¶10.)

of New York (collectively, the '***Defaults***')." (*Id.*, ¶16 (emphases in original); *see also* Bank 56.1 Statement, ¶8.) Hence, on March 7, 2017, the Bank sent the Defendants a written notice: (1) advising the Defendants of their defaults; (2) demanding payment of sums due under the LOC Loan Agreement; and (3) further demanding turnover of the Collateral. (*See id.*, ¶¶17-19; *see also* Bank 56.1 Statement, ¶9.) Neither the Company nor Jacobi has paid the Bank or turned over the Collateral despite the Bank's demands. (*See id.*, ¶¶ 18, 20; *see also* Bank 56.1 Statement, ¶¶10, 12.)

   *B. Procedural Background*

On November 21, 2017, the Bank commenced this action "to enforce its rights in connection with a certain loan agreement, guaranty agreement and security agreement between the Bank and the [D]efendants, pursuant to which the Bank made a line of credit loan . . . in which the principal sum of $490,000.00 remains due." (Complaint at 2, ¶6.) It asserts six causes of action: (1) breach of contract (*see id.* at 5-6, ¶¶21-27); (2) foreclosure of security interest (*see id.* at 6, ¶¶28-31); (3) replevin (*see id.* at 7, ¶¶32-38); (4) conversion (*see id.* at 7-8, ¶¶39-43); (5) unjust enrichment (*see id.* at 8, ¶¶44-47); and (6) breach of guaranty (*see id.* at 8-9, ¶¶48-54). Attached to the Complaint are: the LOC Loan Agreement (as Ex. 1), the Security Agreement (as Ex.2), the Jacobi Guaranty (as Ex. 3), the Subordination Agreement (as Ex. 4), the Mortgage Loan Agreement, as amended (as Ex. 5), and the Default Notice (as Ex. 6).

On January 30, 2018, the Defendants answered the Complaint (*see* Verified[3] Answer ("Answer")(ECF No. 11)) denying the Bank's allegations and raising several affirmative

---

[3] While the Answer is labeled a "Verified Answer", there is no "Verifying Affidavit" or other document at the end of the Answer containing a statement made under oath that supports that representation. (*See* Answer, *in toto*; *cf., e.g.*, Giorgi Verifying Affidavit, attached to Complaint at 10 (sworn statement that Giorgi has read the Complaint, and that "[e]xcept as to allegations alleged upon information and belief, which allegations [he] believes to be true, all the allegations

defenses, including, *inter alia*: that "Defendants attempted to make payments to Plaintiff, but they were refused" (*id.* at (unnumbered) 8 (Second Affirmative Defense)); the Bank "failed to provide any notice to Defendants of the alleged default and denied the Defendants an opportunity to cure the alleged defect" (*id.* at (unnumbered) 9 (Fourth Affirmative Defense)); and, "Defendants are willing to enter into a Forbearance Agreement" (*id.* (Fifth Affirmative Defense)).

On September 7, 2018, the Bank moved for summary judgment in its favor.

*C. The Parties' Positions*

1. <u>The Bank</u>

While seeking summary judgment in its favor on all of its causes of action, the essence of the Bank's argument is that "Defendants do not dispute the validity of the loan documents and Guaranty executed by Roger Jacobi, and [the Bank] can establish the defaults under these agreements and there are amounts remaining due thereunder from the Defendants." (*See* Support Memo at 2.) Indeed, the focus of its Support Memo is twofold: (1) the Defendants are in default because, after the expiration of the LOC term and despite demand, they have not repaid the Bank the outstanding balance on the LOC or turned over the Collateral securing the LOC (*see id.* at 4); and (2) the Defendants have not supported any of their affirmative defenses, which "do not refute the existence of any of the Loan Documents and do not deny the existence of the defaults thereunder" (*id.* at 5; *see also id.* at 6-8 (discussing how each of Defendants' six affirmative

---

in the . . . Complaint are true based on [his] personal knowledge . . . ").) Thus, the allegations in the Answer are insufficient to defeat summary judgment, but the allegations in the Complaint may be used to support the Bank's Summary Judgment Motion. *See, e.g., Patterson v. County of Oneida*, N.Y., 375 F.3d 206, 221 (2d Cir. 2004)("[A] verified pleading, to the extent that it makes allegations on the basis of the plaintiff's personal knowledge, and not merely on information and belief, has the effect of an affidavit and may be relied on to oppose summary judgment." (citing *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001))).

5

defenses fail to defeat the Bank's *prima facie* case)). The Bank does not advance specific discussions regarding its six causes of action.

### 2. The Defendants

The Defendants have not submitted a memorandum in opposition to the Summary Judgment Motion. Rather, they submit Jacobi's "Affidavit in Opposition to the Motion for Summary Judgment (*i.e.*, the Jacobi Affidavit (*see* supra note 1)) who, as the individual Defendant and the principal and sole shareholder of the Company, admits he "fell behind in . . . payments to the [Bank] (*see id.*, ¶3; *see also id.*, 7 ("I recognize my responsibility to pay my debts [but,] . . . was not able to meet my obligations to the [Bank]").) The Jacobi Affidavit does not address any of the Bank's arguments. Instead, Jacobi professes his willingness "to enter into a Forbearance Agreement with the [Bank]", restructure the debt, or arrange for alternative financing to "resolve these debt obligations with the [Bank]." (*Id.*, ¶8.)

## III. Discussion

### A. Applicable Law

#### 1. Motion for Summary Judgment Standard

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *ING Bank N.V. v. M/V TEMARA, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018) (quoting Fed. R. Civ. P. 56(a)); *accord Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018). In ruling on a summary judgment motion, the district court must first "determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted); *see also Ricci v. DeStefano*, 557

U.S. 557, 129 S. Ct. 2658, 2677 (2009) ("On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." (emphasis added; internal quotations and citation omitted)).

In reviewing the record to determine whether there is a genuine issue for trial, the court must "construe the evidence in the light most favorable to the non-moving party," *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017) (quotations, alterations and citation omitted), and "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 45 (2d Cir. 2019) (quotations and citation omitted); *see also Hancock v. County of Rensselaer*, 823 F.3d 58, 64 (2d Cir. 2018) ("In determining whether there is a genuine dispute as to a material fact, we must resolve all ambiguities and draw all inferences against the moving party."). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci*, 557 U.S. at 586 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986)); *accord Baez v. JetBlue Airways Corp.*, 793 F.3d 269, 274 (2d Cir. 2015).

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (quotations, brackets and citation omitted); *accord Jaffer*, 887 F.3d at 114. "[W]hen the moving party has carried its burden[,] . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . [,]" *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769 (2007) (quoting *Matsushita Elec.*, 475 U.S. at 586-87), and must offer "some hard evidence showing that its version of the events is not wholly fanciful[.]" *Miner v.*

7

*Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (quotations and citation omitted). The nonmoving party can only defeat summary judgment "by adduc[ing] evidence on which the jury could reasonably find for that party." *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56 (2d Cir. 2012) (quotations, brackets and citation omitted). Since "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party[,] . . . [i]f the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)(quotations and citations omitted).

2. Local Rule 56.1 Statements

When moving for summary judgment, in addition to complying with the Federal Rule of Civil Procedure 56, the parties must comply with Local Rule 56.1 of the United States District Courts of the Southern and Eastern Districts ("Local Rule 56"). As the Second Circuit has instructed, the Local Rule 56 "requirement is strict". *T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 417 (2d Cir. 2009). Among other things, it:

> requires that any motion for summary judgment be accompanied by a list of the "material facts as to which the moving party contends there is no genuine issue to be tried." S.D.N.Y. & E.D.N.Y. R.56.1(a). The nonmoving party *must respond to each numbered allegation in the moving party's statement* and include, if necessary, a statement of the additional material facts, as to which a genuine issue exists. S.D.N.Y. & E.D.N.Y. R. 56.1(b). In the typical case, failure to respond to a Rule 56.1 statement results in a grant of summary judgment once the court assures itself that Rule 56's other requirements have been met. *T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 417-418 (2d Cir. 2009).

*Parris v. Acme Bus Corp.*, 956 F. Supp. 2d 384, 392 (E.D.N.Y. 2013)(emphasis added).

Furthermore, Local Rule 56.1(c) states:

> Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party

8

> *will be deemed to be admitted* for purposes of the motion *unless* **specifically** *controverted* **by a corresponding numbered paragraph** in the statement required to be served by the opposing party.

(Italicized and boldface emphasis added); *see also Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)("If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." (citations omitted)); *Taylor & Fulton Packing, LLC v. Marco Intern. Foods, LLC*, No. 09-cv-2614, 2011 WL 6329194, at *4 (E.D.N.Y. Dec. 16, 2011)("Where a nonmovant . . . files a deficient statement, courts frequently deem all supported assertions in the movant's statement admitted and find summary judgment appropriate." (footnote omitted)).  Moreover, to specifically controvert a statement of material fact, a nonmovant is required to do so with specific citation to admissible evidence.  *See* Local Rule 56(d); *see also Ezagui v. City of N.Y.*, 726 F. Supp.2d 275, 285 n.8 (S.D.N.Y. 2010)(noting statements which a nonmovant does "not specifically deny–with citations to supporting evidence–are deemed admitted for purposes of [movant's] summary judgment motion") (collecting cases); *see also Universal Calvary Church v. City of N.Y.*, No. 96-cv-4606, 2000 WL 1745048, *2 n.5 (S.D.N.Y. Nov. 28, 2000).

  B.  *The Instant Case*

    1.  <u>Defendants' Nonresponse</u>

The Defendants submitted neither an opposition memorandum nor a Rule 56.1 Statement. *See* Local Rules 7.1(b)(directing, *inter alia*, the "setting forth [of] the cases and other authorities relied upon in support" of the opposition), 56.1(b)-(d) (discussing the requirements of a Rule 56.1 Statement).  Therefore, the Bank's Summary Judgment Motion is deemed unopposed and its Rule 56.1 Statements are deemed admitted.

"Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004); *see also, e.g., Petion v. Nassau County Corr. Facility*, No. 15-cv-5770, 2019 WL 3082489, at *1 (E.D.N.Y. July 15, 2019) (citing *Vermont Teddy Bear*); *Rapillo v. CitiMortgage, Inc.*, No. 15-cv-5976, 2018 WL 1175127, at *4-5 (E.D.N.Y. Mar. 5, 2018)("[T]he court may properly grant an unopposed motion for summary judgment only where the facts as to which there is no genuine dispute show that the moving party is entitle to a judgment as a matter of law." (internal quotations omitted; further citations omitted)). However, "in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Jackson v. Federal Exp.*, 766 F.3d 189, 198 (2d Cir. 2014); *see also, e.g., Glover v. City of N.Y.*, No. 15-cv-4899, 2018 WL 4906253, at *29 (where non-movant abandoned claims by not responding to movant's arguments, granting summary judgment in favor of movant as to those claims)(collecting cases).

2. The Bank's Breach of Contract Claims

Under New York law,[4] "there are four elements to a breach of contract claim: '(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" *Scarpinato v. 1770 Inn, LLC*, No. 13-cv-0955, 2015 WL 4751656, at *3 (E.D.N.Y. Aug. 11, 2015) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).

---

[4] Pursuant to § 9.2 of the LOC Loan Agreement, New York law governs this dispute.

(a.) *The Company's Breach: The Bank's First Cause of Action*

The evidence shows, and the Defendants do not dispute, the existence of an agreement, *i.e.*, the LOC Loan Agreement, and the Bank's adequate performance of the contract, *i.e.*, the Bank lent the Company monies pursuant to the LOC. Further, the Defendants do not dispute the Company's default under the LOC Loan Agreement. Indeed, the Company admits to not being able to meet its obligations to the Bank. (*See* Jacobi Affidavit, ¶ 7; *see also id.*, ¶ 3 (admitting to falling behind on payments to the Bank).) Similarly, there is no dispute that the Bank is due $490,000.00 (as of November 9, 2017), plus accrued and accruing interest, default rate interest, late charges, contractual costs, attorneys' fees and all other charges due to the Bank under the LOC Loan Agreement. Accordingly, there are no disputed facts that need to be resolved by a jury. Nor is the Defendants' willingness to enter into a forbearance agreement with the Bank a viable defense to this breach of contract claim. Rather, as a matter of law, the Bank is entitled to summary judgment on its First Cause of Action.

(b.) *Jacobi's Breach: The Bank's Sixth Cause of Action*

Similarly, as to Jacobi, the record evidence establishes: the existence of the Guaranty (*see* Ex. 3, *attached to* Complaint,), *i.e.*, the relevant agreement; the Bank's adequate performance by, *e.g.*, lending the Company monies pursuant to the LOC; Jacobi's breach of the Guaranty by failing to pay the Bank the outstanding balance due under the LOC after the Company did not do so upon the LOC's expiration; and, damages as the Bank is still owed $490,000.00 (as of November 9, 2017), plus accrued and accruing interest, default rate interest, late charges, contractual costs, attorneys' fees and other charges. Even considering Jacobi's willingness to enter into a forbearance agreement, on the record presented, no rational fact finder could find

that Jacobi is not in breach of the Guaranty. Therefore, as a matter of law, the Bank is entitled to summary judgment on its Sixth Cause of Action.

### 3. The Bank's Foreclosure Claim, its Second Cause of Action

The Bank seeks a "judgment foreclosing upon its security interest in the Collateral, awarding [it] immediate possession of the Collateral, and permitting [it] to dispose of same and apply the proceeds thereof to the obligations and liabilities of [the Company] in accordance with Article Nine of the Uniform Commercial Code [("UCC")]." (Complaint, ¶31.) The basis for this claim rests upon the Security Agreement (*see* Ex. 2, attached to Complaint), which provides the Bank with a blanket security interest in all the Company's assets, and its filing of "a UCC-1 Financing Statement with the Secretary of state of the State of New York on January 16, 2009, under File No. 200901168021019, which was continued on July 31, 2013, under file No. 201307315816759" (*id.*, ¶29) pursuant to which the Bank's interest was perfected.

Under Article Nine of the New York Uniform Commercial Code, after a borrower defaults, a secured party "may reduce a claim to judgment, foreclose, or otherwise enforce the claim [or] security interest . . . by any available judicial procedure." N.Y. U.C.C. §9-601(a)(1). A secured creditor's rights "are cumulative and may be exercised simultaneously." *Id.*, §9-601(c). Further, "[a]fter default, a secured party may take possession of the collateral" "pursuant to judicial process[] or without judicial process, if it proceeds without breach of the peace." *Id.*, §9-609(a)10, (b)(1)-(2). Once in the secured party's possession, in compliance with §9-610, the collateral may be disposed. *See id.*, § 9-610(a); *see also Rapillo*, 2018 WL 1175127, at *7 ("New York U.C.C. § 9-610 authorizes a secured party to dispose of its collateral, including by selling it, upon a default by the debtor.").

Upon the record presented, there is no dispute that: the Bank has a perfected priority security interest in the Collateral; defaults by the Defendants have occurred; and, as a result of the defaults, the Bank is entitled to take possession of the Collateral and dispose of it. Therefore, as to the Bank's claim to foreclose its security interest in the Collateral, there are no issues of fact to present a jury for its resolution; thus, as a matter of law, the Bank is entitled to summary judgment in its favor on its Second Cause of Action.

### 4. The Bank's Replevin Claim, its Third Cause of Action

> Replevin is a remedy employed to recover specific identifiable items of personal property. A cause of action sounding in replevin must establish that the defendant is in possession of certain property of which the plaintiff claims to have a superior right. A replevin claim against a good-faith possessor accrues when the true owner make demand for return of the chattel and the person in possession of the chattel refuses to return it.

*Engenharia Brasil, S.A. v. Int'l Aerospace Group, Corp.*, 127 F. Supp.3d 202, (S.D.N.Y. 2015)(internal quotations, alterations, and citations omitted); *see also Dore v. Wormley*, 690 F. Supp.2d 176, 183 (S.D.N.Y. 2010)( "The law of replevin governs actions for the recovery of stolen and wrongfully detained property. A cause of action in replevin 'must establish that the defendant is in possession of certain property of which the plaintiff claims to have a superior right.'" (quoting *Batsidis v. Batsidis*, 778 N.Y.S.2d 913, 913 (2004)).

The Bank's replevin cause of action fails because there is no evidence that, despite its entitlement to take possession of the Collateral if a default occurs, the Bank has a superior right over the Defendants to the Collateral. From the record presented, at most, the Bank has a security interest in the Collateral, which the Company pledged, but still owns. (*See* Security

Agreement, ¶1, *attached as* Ex. 2 to the Complaint.) Without this requisite showing, the Bank cannot prevail on its replevin claim.[5]

### 5. The Bank's Conversion Claim, its Fourth Cause of Action

> Conversion is typically viewed as the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights. The tort of conversion is established when one who owns and has a right to possession of personal property proves that the property is in the unauthorized possession of another who has acted to exclude the rights of the owner. Where possession of property is initially lawful, conversion occurs when there is a refusal to return the property upon demand.

*Engenharia Brasil,* 127 F. Supp.3d at 209-10 (internal quotations, alterations, citations, and footnote omitted); *see also Dore*, 690 F. Supp.2d 182-83 (same). As the Court discussed in denying the Bank's replevin claim, the record evidence establishes that the Company is the owner of the Collateral (*see* Security Agreement, ¶1, *attached as* Ex. 2 to the Complaint). It is not some other party assuming and exercising, without authority, the right of ownership over the Collateral to which the Bank has a security interest. Thus, while the Defendants have not turned over the Collateral to the Bank, the Bank has not established that its security interest, versus the Defendant's ownership rights, gives it "an immediate superior right of possession" to the Collateral. On the record presented, the Bank cannot sustain its conversion cause of action, thereby warranting its summary denial.[6]

---

[5] Moreover, what the Bank appears to be accomplishing by way of its replevin claim is duplicative of its foreclosure claim, *i.e.*, taking possession of the Collateral in order to liquidate it and apply the liquidation proceeds to the Defendants' obligations to the Bank.

[6] Further, like its replevin claim, the Bank's conversion claim is duplicative of its foreclosure claim. (*See supra* note 5.)

> 6. The Bank's Unjust Enrichment Claim, its Fifth Cause of Action
>
> The theory of unjust enrichment lies as a quasi-contract claim and contemplates an obligation imposed by equity to prevent injustice, *in the absence of an actual agreement between the parties*. An unjust enrichment claim is rooted in the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. Thus, in order to adequately plead such a claim, the plaintiff must allege that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered.

*Campione v. Campione*, 942 F. Supp.2d 279, 283 (E.D.N.Y. 2013) (internal quotations, alterations, and citations omitted) (emphasis added). No cause of unjust enrichment lies here. There is no dispute that there are actual agreements between the Bank and the Defendants and that, pursuant to those agreements, the parties' obligations to each other are defined. Hence, the need to impose by equity a quasi-contract to prevent injustice does not present itself in this case. As a matter of law, the Bank is not entitled to judgment in its favor on its unjust enrichment cause of action.

IV.     Conclusion

Accordingly, having viewed the evidence in the light most favorable to the Defendants, IT IS HEREBY ORDERED that the Bank's Summary Judgment Motion is:

　　A. GRANTED as to the First, Second, and Sixth Causes of Action; and

　　B. DENIED as to the Third, Fourth, and Fifth Causes of Action.

IT IS FURTHER ORDERED that:

　　A. by no later than August 30, 2019, the Bank is to file with the Court and serve upon the Defendants:

1. a proposed form of judgment as to the $490,000 due, together with its claimed: accrued and accruing interest; default rate interest; late charges; contractual costs; attorneys' fees, and all other charges due to it under the LOC Loan Agreement (hereafter, "Proposed Judgment"; and

2. in the form of a supplemental letter brief (hereafter, "Letter Brief"):

(a.) its computations for the claimed interest, costs, and charges; and

(b.) its contemporaneous time records supporting claimed attorney's fees;

and

B. by no later than September 20, 2019, the Defendants may file with the Court and serve upon the Bank their response, if any, to the Proposed Judgment and/or Letter Brief.

\* \* \*

The September 19, 2019 Status Conference is adjourned to November 20, 2019 at 11:15 a.m. (Courtroom 1010 of the Central Islip Federal Courthouse).

SO ORDERED this 5th day of August 2019 at Central Islip, New York.

/s/ *Sandra J. Feuerstein*
Sandra J. Feuerstein
United States District Judge